**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| LESLIE A. KERR, | No. 12-35084 |
| Plaintiff - Appellant, | D.C. No. 3:08 cv-0230 RRB |
| v. | |
| SALLY JEWELL,[*] Secretary of United States Department of the Interior, | MEMORANDUM[**] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted May 22, 2013
Anchorage, Alaska

Before:    TASHIMA, TALLMAN, and N.R. SMITH, Circuit Judges.

_____

[*]    Sally Jewell is substituted for her predecessor in office, Kenneth Lee Salazar pursuant to Fed. R. App. P. 43(c)(2).

[**]    This disposition is not appropriate for publication and is not precedent, except as provided by Ninth Cir. R. 36-3.

Plaintiff-Appellant Leslie Kerr, formerly the manager of the Kodiak National Wildlife Refuge ("Kodiak"), asserts claims for unlawful retaliation under Title VII of the Civil Rights Act of 1964 and under the Whistleblower Protection Act of 1989 ("WPA"). The district court granted summary judgment to the government. We reverse. With respect to the Title VII claim, we hold that Kerr has raised a triable issue of fact as to whether the government's articulated reasons for her permanent reassignment are mere pretexts for unlawful retaliation. With respect to the WPA claim, we conclude that Kerr's disclosures are protected under the WPA as originally enacted in 1989.

**I.**

Kerr was employed by the Fish and Wildlife Service ("FWS") as the manager of Kodiak. In May 2005, a report was issued summarizing the findings of an administrative inquiry regarding the conduct of certain other employees. The report recommended that Kerr be placed on a performance improvement plan to address her purportedly uncompromising management style.

In July 2005, Michael Boylan, Kerr's immediate supervisor, conducted a performance review with Kerr, during which the administrative inquiry report was discussed. At one point, Boylan stated to Kerr, "This is going to sound sexist as hell, but couldn't you learn to be more feminine?" Boylan does not deny having

made a statement to this effect. During her performance review, Kerr also complained to Boylan about problems with alcohol abuse among Kodiak personnel.

In November 2005, a controversy arose after the suicide of Wilker, who had a history of alcohol and mental health problems. Wilker's suicide followed shortly after his forced resignation from the FWS. On the day of his suicide, Wiliker was cleaning out his office when Kerr invited him into her office in the presence of another employee. There, she held Wilker's hand for one to two minutes while speaking to him about his departure and complimenting him. Afterwards, Wilker told the other employee who had been in the room that he was uncomfortable with the situation.

On January 26, 2006, Boylan issued a letter of warning to Kerr as a result of the Wilker incident.[1] Boylan also completed a performance evaluation of Kerr and rated her as "minimally successful" in the category of leadership and supervision. This resulted in an overall rating of minimally successful.

---

[1]    Wilker had previously complained of sexual harassment by Kerr following a 2004 incident in which Kerr allegedly told Wilker that she loved him (Kerr disputes the nature of this incident). Boylan issued Kerr a verbal warning following the 2004 incident.

That same day, Logan informed Kerr that she was being assigned to a 60-day detail in Anchorage to serve as Division Chief for Conservation Planning and Policy. Logan and Boylan contend that the primary reason Kerr was selected for this detail was her expertise in planning. Logan also contends that it was only a secondary benefit that removing Kerr from Kodiak could relieve some of the tension among the personnel there. Kerr began the Anchorage detail on February 5, 2006.

On February 6, 2006, Kerr sent Boylan a written request for reconsideration of his January 26, 2006, performance evaluation. In this request, Kerr raised the comments Boylan had made in July 2005 about needing to be more feminine. Kerr also wrote:

> As I have learned more about typical behaviors of alcoholics in the aftermath of this tragedy, I am becoming more aware of the extraordinary role that alcohol has played and continues to play in the workplace environment at Kodiak Refuge. During the performance year under discussion, the staff included one admitted alcoholic, two additional staff members who had conduct problems related to abuse of alcohol, one other staff member known to regularly consume alcohol and three more staff members who come from alcohol family systems . . . . This is the real systemic problem that must be addressed at Kodiak.

On February 8, 2006, Kerr sent another letter to Boylan, this time objecting to the January 26, 2006, warning letter that resulted from the incident with Wilker.

This letter again raised Boylan's comment about being more feminine, and also related how, when Kerr first arrived as manager of Kodiak, she discovered Playboy magazines in a cabin in the refuge. Kerr also asserted that there had been excessive alcohol consumption under the prior refuge manager.

On February 20, 2006, Kerr sent a letter to Human Resources ("HR") and the Performance Review Board, requesting reconsideration of Boylan's January 2006, performance evaluation. The letter also recounted Boylan's feminine comment, the Playboy magazines Kerr had found, and the generous treatment that had been afforded to the prior refuge manager. Kerr also discussed the alcohol problems at Kodiak that she had communicated to Boylan.

Separately, on February 20, 2006, Kerr filed a formal grievance with FWS' Personnel Office, in which she protested the January 26, 2006, letter of warning concerning the Wilker incident. In the grievance, Kerr wrote:

> Although it would be unnecessary for resolution of this grievance, and is not a part of this grievance, I believe this is an appropriate document in which to call to FWS management's attention the existence of my superiors' gross mismanagement of the FWS operations at the Kodiak National Wildlife Refuge. As I recently detailed in my request for reconsideration to the Performance Review Board, there is a serious alcohol problem by FWS employees at Kodiak. Despite my repeated requests for assistance and seeking of resources, this problem remains unaddressed by upper management and has resulted in the referenced staff member suicide. This alcohol abuse problem has been brought to the attention of Mr. Boylan by me

-5-

in the past and again recently. A problem of this magnitude fundamentally threatens the FWS mission and operations at Kodiak.

On March 3, 2006, Logan informed Kerr that she was being permanently reassigned to the policy planning position in Anchorage. Logan cited Kerr's "technical expertise and leadership skills" as rendering her well-qualified for the position, but he added that "the Kodiak Refuge would benefit from new leadership." Logan informed Kerr that she could be subject to removal if she declined the reassignment.

On March 30, 2006, Kerr filed a formal complaint with the Department of the Interior's Office of Inspector General ("OIG"). In the complaint, Kerr raised her allegations of alcohol abuse at Kodiak.

Kerr declined the permanent reassignment, Logan subsequently initiated removal proceedings, and Kerr retired involuntarily. Kerr filed a formal Equal Employment Opportunity ("EEO") complaint, which the Department of the Interior's Office of Civil Rights rejected.

Kerr then filed this action. Among other claims, Kerr asserted causes of action under Title VII and the WPA for alleged unlawful retaliation. The district court granted summary judgment to the government on all of Kerr's claims. With respect to the Title VII retaliation claim, the district court held that Kerr had

established a prima facie case of retaliation, but that the government presented legitimate reasons for the adverse actions, and Kerr had not met her burden in demonstrating pretext. With respect to the WPA claim, the district court first held that Kerr's only protected disclosures for purposes of her WPA claim were those in her OIG complaint, and then held that, because Kerr did not contact OIG until after she was permanently reassigned to the Anchorage position, she could not demonstrate that the adverse actions occurred "because of" the protected disclosures made in the OIG proceedings.

Kerr timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

**II.**

We review the district court's grant of summary judgment *de novo*. *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012).

The familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs Kerr's Title VII retaliation claim. Under this framework, a plaintiff must first establish a prima facie case of retaliation. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). At oral argument, the government conceded that Kerr's complaints of gender discrimination – during her July 2005 performance review and in her

February 2006 letters – constitute protected activities for purposes of Title VII.[2]

The government also does not dispute that the temporary detail to the Anchorage position on January 26, 2006, as well as the permanent reassignment to that position on March 3, 2006, represent adverse employment actions.

The final factor needed for a prima facie case is to establish "a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). We may infer the requisite causal link from "the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). Here, such proximity is readily apparent; Kerr's February 2006 letters were sent less than a month prior to her permanent reassignment.

The government advances two legitimate, non-retaliatory reasons for the challenged actions. First, It asserts that Kerr was uniquely qualified for the planning position in Anchorage. Second, the government asserts that Kodiak would benefit from new leadership given the tension that existed between Kerr and some of her subordinates. Kerr does not contest that these explanations satisfy the government's burden at the second step of the *McDonnell Douglas* framework.

---

[2] In making this concession, the government expressly withdrew arguments to the contrary raised in its answering brief.

Kerr must therefore demonstrate a triable question of fact as to whether the explanations put forward by the government are mere pretexts for retaliatory animus. Where, as here, the evidence of pretext is circumstantial, a plaintiff "must produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011). We have repeatedly cautioned, however, that this standard is "tempered" by the observation that "a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one.'" *Id.* (quoting *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007)).

We conclude that, with regard to her permanent reassignment, Kerr has raised a sufficient question of pretext to survive summary judgment. Specifically, Kerr has raised a material question as to why the transfer to Anchorage was changed from its original temporary nature. Logan informed Kerr of the 60-day detail on January 26, 2006. Various persons have testified that this assignment was in fact intended to be temporary. Yet roughly a month later, on March 3, 2006, Logan notified Kerr that the reassignment was permanent, without explanation for the change in duration from temporary to permanent. Kerr's February 2006, complaints of gender bias to Boylan and HR occurred in the intervening period of time. The temporal proximity of these complaints to the permanent reassignment alone provides a sufficient basis from which to infer pretext. *See Dawson*, 630

F.3d at 937 ("In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext."). But the timing of the complaints is all the more suggestive when considered in the context of the change from the original temporary assignment and the lack of a full explanation for that change.

Kerr further points to evidence of pretext in asking why she was terminated from her employment when she declined the permanent reassignment. Logan testified that when he placed Kerr on the original detail in January 2006, he had not "come to the conclusion that it was important to the effectiveness of the Kodiak Refuge to have Ms. Kerr taken off the refuge." A jury could reasonably question why Logan reached a different conclusion only a month later.

We therefore hold that the district erred in concluding that Kerr has not demonstrated a triable issue of pretext.[3] Accordingly, we reverse the district court's grant of summary judgment on Kerr's Title VII retaliation claim. On

---

[3] In reaching the contrary conclusion, the district court gave no consideration to the government's continuing assertion that Kerr's qualifications were the primary motivation for the reassignment. Instead, the district court focused exclusively on the problems between Kerr and the staff at Kodiak as the reason for the transfer. Even if the government took this tack – which it does not – the discrepancy between this explanation and the explanation advanced at the time of the action would represent evidence of possible pretext. *See Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997); *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991).

remand, this claim shall be limited to Kerr's permanent reassignment, and whether this reassignment was attributable to her February 2006 complaints of gender discrimination.

## III.

Kerr's WPA claim arises under 5 U.S.C. § 2302(b)(8)(A). At the time of the events in question, this provision prohibited federal officials from taking personnel actions against employees or applicants for employment because of:

> any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences – (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety[.]

5 U.S.C. § 2302(b)(8)(A) (2006).

A plaintiff must establish four elements to succeed on a claim under this provision: (1) the acting official had the authority to take, recommend, or approve any personnel action; (2) the plaintiff made a protected disclosure; (3) the acting official used his authority to take, or refuse to take, a personnel action against the plaintiff; and (4) the acting official took, or failed to take, the personnel action against the plaintiff because of the protected disclosure. *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 888 (9th Cir. 2004).

-11-

The district court granted summary judgment based on the second and fourth of these elements. It held that Kerr's only protected disclosures were those in her OIG complaint. The court then held that, because Kerr's initial contact with OIG was after both the temporary detail and the permanent reassignment, these adverse actions could not have occurred "because of" the disclosures to OIG. Kerr does not appeal this holding with respect to the OIG complaint.

Kerr does challenge, however, the district court's determination that her pre-OIG communications do not constitute protected disclosures. In reaching this conclusion, the district court relied on a number of doctrines arising from cases in the Federal Circuit. *See Huffman v. Office of Personnel Mgmt.*, 263 F.3d 1341 (Fed. Cir. 2001); *Horton v. Dep't of the Navy*, 66 F.3d 279 (Fed. Cir. 1995); *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679 (Fed. Cir. 1992). The government urges us to adopt these doctrines and reject Kerr's WPA claims. We decline the invitation and, instead, decide the question as a straightforward issue of statutory interpretation. Section 2302(b)(8)(A) protects an employee making "*any* disclosure" (emphasis added) where the employee reasonably believes that the information evidences: "(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety[.]" Clearly, we must take the language

"any disclosure" at face value, which compels us to conclude that Kerr's complaints fall within the broad protective scope of § 2302(b)(8)(A).

Because we hold that the district court erred in granting summary judgment on the ground that Kerr's pre-OIG disclosures were not protected, we need not decide whether the WPEA should be retroactively applied.[4]

The government contends, in a single paragraph in its answering brief, that even if Kerr did engage in protected activity prior to the adverse actions she suffered, summary judgment is appropriate because Kerr cannot demonstrate that those adverse actions occurred "because of" the protected activity. The district court, however, did not reach this question, and we decline to do so in the first instance. We are especially reluctant to rest on this basis given the evidence of pretext previously described in the context of Kerr's Title VII claim.

**IV.**

We reverse the district court's grant of summary judgment on Kerr's Title VII retaliation claim and her WPA claim. We remand both claims for further proceedings consistent with this disposition.

---

[4] We note that the Merit Systems Protection Board recently held that the WPEA *does* apply to conduct preceding its passage on the theory that the WPEA was merely a clarification of existing law. *See Day v. Dep't of Homeland Sec.*, 2013 M.S.P.B. 49 (2013).

**REVERSED and REMANDED**.