**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 14 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RAMON OLVERA, | No. 20-55957 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-06157-RGK-SK |
| v. | |
| QUEST DIAGNOSTICS, INC., a business entity; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted October 18, 2021
Pasadena, California

Before: CALLAHAN and FORREST, Circuit Judges, and AMON,[**] District
Judge.

After Quest Diagnostics ("Quest") fired Ramon Olvera ("Olvera") from his

courier position, he sued claiming his termination was based on his age.

Specifically, he alleged: (1) age discrimination in violation of California's Fair

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Carol Bagley Amon, United States District Judge for the Eastern District of New York, sitting by designation.

Employment and Housing Act ("FEHA"); (2) breach of an implied contract; (3) breach of the covenant of good faith and fair dealing; and (4) wrongful termination.[1] The district court granted summary judgment to Quest on all claims. Olvera appealed, arguing that the district court erred in dismissing his claims and in failing to grant his Federal Rule of Civil Produce 37 sanctions motion for claimed discovery violations.

We have jurisdiction under 28 U.S.C. § 1291 and reverse and remand as to each of Olvera's age discrimination-related claims. We affirm the district court's Rule 37 determination.

We review a district court's order granting summary judgment de novo. *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 (9th Cir. 2015). A decision to deny or grant a Rule 37 motion is reviewed for abuse of discretion. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

**1.** Olvera argues that the district court erred in finding that he failed to provide sufficient evidence that Quest's reason for firing him was pretextual. We agree.[2]

---

[1] Olvera also raised disability-related claims before the district court, but he does not appeal the decision to grant summary judgment to Quest on those claims.
[2] We do not fault the district court for failing to consider the pretext arguments Olvera raises on appeal. They were not clearly raised at summary judgment in the context of pretext. However, Quest has not asserted that these arguments are waived, and we have repeatedly recognized that "a party can 'waive waiver

In reviewing FEHA age discrimination claims, courts apply the three-part burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). Here, the district court determined that although Olvera had established a prima facie case of age discrimination, he failed to provide sufficient evidence of pretext to undermine Quest's stated reason for firing him: namely, that by misplacing an Irreplaceable Specimen, Olvera violated one of Quest's Critical Standards.[3]

We find that there are "genuine dispute[s]" of "material fact" as to whether Quest's reason for firing Olvera was pretextual. *See* Fed. R. Civ. P. 56(a). Quest's shift from characterizing Olvera's alleged misconduct as a Basic Standard violation to a Critical Standard violation, coupled with the suspect timing of the Final Written Warning, the alleged ageist comments from Quest supervisors, and Olvera's implicit claim that Quest invented the error for which he was fired, lead us to this conclusion.

When an employer provides "shifting, inconsistent reasons" for terminating an employee, the differing reasons "are themselves evidence of pretext." *Ollier v.*

---

implicitly by failing to assert it.'" *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) (internal quotation marks omitted) (quoting *Tokatly v. Ashcroft*, 371 F.3d 613, 618 (9th Cir. 2004)); *see also United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th Cir. 2002).

[3] Quest's West Region Logistics Professional and Performance Standards and Guidelines for Employees establish worker policies, practices, and responsibilities. Violations of Critical Standards are deemed the most serious.

*Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 870 (9th Cir. 2014); *see also*

*Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir. 2004)

(collecting cases).

Although Quest has claimed throughout the course of litigation that Olvera was fired because his conduct constituted a Critical Standard violation, the documentation of his termination clearly characterizes his July 17, 2017 error as a Basic Standard violation. The difference between a Critical Standard violation and a Basic Standard violation is not a mere matter of semantics: Quest's policy guidance is clear that a violation of a Critical Standard can be grounds for termination but does not specifically list termination as a repercussion for violating a Basic Standard. Most troubling is that Quest gives no explanation for the change from Basic to Critical, and contrary to Quest's claim, Olvera did not admit to a Critical Standard violation. A reasonable jury could draw the inference that Quest realized that firing someone for a Basic Standard violation was questionable, whereas changing the rationale to a Critical Standard violation was a stronger cover for a termination decision related, at least in part, to Olvera's age.

Quest also claims that Olvera received a Final Written Warning on February 28, 2017 for an accident that occurred that same month. In the termination documentation, Olvera's supervisor refers to this Final Written Warning as informing her request to terminate Olvera. Yet, the Final Written Warning was not

4

signed by Olvera or his supervisor until July 28, 2017, after the incident giving rise to his termination. As with the shifting rationale, Quest does not address why the Final Written Warning appears to have been issued months after the February accident occurred, nor could it explain the timing discrepancy at oral argument. The timing supports an inference that Quest did not issue the Final Written Warning until after the July 17, 2017 incident and did so to support its decision to terminate Olvera.

Ageist comments attributed to Olvera's supervisors—that Quest wanted to get rid of older workers because they accrued more paid leave time—further support the inference that Quest targeted older employees for termination. Although some of these remarks alone may not be sufficient to establish pretext, they are unquestionably significant in determining whether the evidence as a whole supported Olvera's claim that Quest's rationale for firing him was pretextual.

Finally, Olvera's contention that Quest invented the July 17, 2017 error for which he was fired supports his pretext claim. The district court dismissed the significance of Olvera denying the error,[4] stating "Plaintiff, not Defendant, has the burden of producing material facts to show that Defendant acted in bad faith. Simply denying the basis for his termination is insufficient to create a triable issue

---

[4] The district court addressed Olvera's denial in the context of his breach of the implied covenant of good faith and fair dealing claim, but Olvera raised this issue in other parts of his opposition to summary judgment, as well.

5

of fact." However, Olvera did more than "[s]imply deny[] the basis for his termination." He claims he saw Quest's video surveillance and that it does not show that he made a mistake. He also notes, without contradiction, that Quest failed to produce the video in discovery. These allegations render Olvera's denial more than conclusory.

In sum, taken together, the evidence presented by Olvera is sufficient to defeat summary judgment on the issue of pretext. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000).

**2.** Since the issue of pretext affects Olvera's remaining claims, we also remand them to the district court. In his implied breach of contract claim, Olvera alleged that Quest could not terminate him without good cause. Firing someone because of his age is not good cause. For this same reason, there is also a triable issue as to whether Quest violated an implied contract with Olvera.

**3.** We also reverse summary judgment on Olvera's wrongful termination claim, which was based on the district court's conclusion about his FEHA claim.

**4.** Olvera has also demonstrated a triable issue as to whether Quest violated the implied covenant of good faith and fair dealing. When basing this type of claim on an improper termination motive, a "plaintiff must provide factual evidence that the dismissal was pretextual." *Maeger v. Inland Container Corp.*, No. C.96-2041 TEH, 1997 WL 724444, at *4 (N.D. Cal., Nov. 12, 1997). Again, Olvera has

6

presented sufficient evidence to defeat summary judgment.

**5.** We affirm the district court's ruling on Olvera's discovery objections and Rule 37 motion. Olvera argued that Quest violated Federal Rules of Civil Procedure 26(a)(1)(A)(i), 26(a)(1)(A)(ii), and 26(e) by not timely disclosing three additional witnesses and 104 documents. However, Quest made the challenged disclosures before the close of discovery, and the district court was well within its discretion to allow them into the record.

**REVERSED AND REMANDED IN PART, AFFIRMED IN PART.**

**The parties will bear their own costs on appeal.**