**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GREGORY S. HAWN; MICHAEL R.
PRINCE; ARIC A. ALDRICH,
              *Plaintiffs-Appellants,*

              v.

EXECUTIVE JET MANAGEMENT, INC.,
              *Defendant-Appellee.*

No. 08-15903

D.C. No.
2:04-CV-02954-
SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted
January 12, 2010—San Francisco, California

Filed August 16, 2010

Before: Alex Kozinski, Chief Judge, J. Clifford Wallace,
Circuit Judge, and William H. Alsup, District Judge.*

Opinion by Judge Wallace

---

*The Honorable William H. Alsup, United States District Judge for the
Northern District of California, sitting by designation.

11733

## COUNSEL

Tod F. Schleier, Schleier Law Offices, P.C., Phoenix, Arizona, for the plaintiffs-appellants. Bradley H. Schleier, Schleier Law Offices, P.C., Phoenix, Arizona, on the brief.

Celeste M. Wasielewski, Duane Morris LLP, Washington, D.C., for the defendant-appellee. Lorraine P. Ocheltree, Duane Morris LLP, San Francisco, California, and Maureen Beyers, Osborne Maledon PA, Phoenix, Arizona, on the brief.

---

## OPINION

WALLACE, Senior Circuit Judge:

Gregory Hawn, Michael Prince and Aric Aldrich (collectively, plaintiffs) appeal from the district court's summary judgment in favor of their former employer, Executive Jet Management (Executive Jet). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

Plaintiffs are male pilots who were employed by Executive Jet, which is in the business of aircraft management and charter operations. All of the plaintiffs were terminated after a female flight attendant, Robin McCrea, alleged that plaintiffs had sexually harassed her and created a hostile work environment through an array of conduct including sexualized banter, crude jokes, and the sharing of crude and/or pornographic emails and websites. According to plaintiffs, however, McCrea was an active participant in, or initiator of, much of the conduct of which she accused them. Plaintiffs contend that their terminations were illegal because McCrea and other Executive Jet female flight attendants engaged in similar conduct but were not terminated because they were females.

Plaintiffs and McCrea were stationed at Executive Jet's base at Williams Gateway Airport in Arizona. On January 6, 2003, McCrea complained to her immediate supervisor, Amy Jackson, that Aldrich had behaved inappropriately during a training seminar a few days earlier. Jackson reported the com-

plaint to Executive Jet's Human Resources Director, Cynthia Brusman. On January 10, 2003, McCrea faxed a letter to Brusman that stated she had experienced a hostile work environment at the Williams Gateway base and requested a transfer.

In response, Executive Jet's Chief Pilot, Michael Chakerian, interviewed McCrea, Aldrich, Prince, and several other Executive Jet employees. Chakerian submitted the results of his interviews in a written report to Executive Jet. Chakerian's report reflected that Prince and Aldrich were "shocked" by McCrea's allegations because she had participated in, and often encouraged, the banter and joking of which she complained. Chakerian's report also reflected that another male pilot stationed at the Williams Gateway base was similarly surprised by McCrea's allegations. A female flight attendant interviewed by Chakerian described McCrea as short-tempered, aggressive, and negative. A female pilot interviewed by Chakerian similarly described McCrea as personally insecure and moody, and also described McCrea as flustered during the training exercise. Both this female pilot and the female flight attendant implied to Chakerian that McCrea's allegations may have been motivated by her desire for a transfer to a different Executive Jet base.

On January 14, 2003, McCrea faxed another letter to Brusman. This time, McCrea attached a twelve-page document that detailed her allegations against Aldrich stemming from the training seminar. This document also contained new allegations of sexual harassment against Aldrich, Prince, Hawn, and others. Following receipt of these new and more detailed allegations, Executive Jet hired an independent investigator, James Sterling, to look into McCrea's accusations. This investigation lasted approximately two months. In the meantime, on January 27, 2003, McCrea filed a discrimination charge against Executive Jet with the United States Equal Employment Opportunity Commission (EEOC).

Around March 31, 2003, Sterling's report was submitted to Executive Jet. In the "Synopsis" of his report, Sterling stated:

> The results of this investigation indicate that there have been confirmed instances of a few of the behaviors indicated in Ms. McCrea's document of complaint. However, there are also a greater number of incidents that she has alleged happened that have been unconfirmed, denied or told to me in a different light, implying that Ms. McCrea either participated in the actions or in some instances initiated them.

In the concluding "Summary" of his report, Sterling stated that "[t]hroughout the duration of this investigation, I have continually found there to be some items in Ms. McCrea's document of complaint to be verified." Sterling continued, "in the same vein, I must say that there have been numerous items, which have not been corroborated by this investigation." He concluded: "The bottom line is that there appears to be some fact as well as some fiction interwoven throughout Ms. McCrea's document of complaint. . . . To conclude this investigation I believe that the company will have to 'sift the wheat from the [chaff],' in Ms. McCrea's document of complaint . . . ."

On April 18, 2003, all three plaintiffs were terminated. A few months later, in July 2003, the EEOC issued a determination of the merits of McCrea's complaint, finding in part that "the evidence revealed that Respondent fostered a hostile work environment created by demeaning, crude, derogatory sex-based remarks."

In February 2004, each of the plaintiffs filed a claim of discrimination with the EEOC. All of these claims were dismissed. Plaintiffs subsequently filed this action, alleging discrimination on the basis of race, sex and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 and 42 U.S.C. § 1981.

Plaintiffs complain that Executive Jet was aware that a group of five female flight attendants, one of whom was McCrea, had "engaged in sexual e-mails [and] sexual discussions" similar to the conduct that led to plaintiffs' terminations. Unlike plaintiffs, however, the female employees were not disciplined in any way, much less terminated. Plaintiffs argue that their terminations were thus discriminatory because, in effect, Executive Jet singled them out for termination because they were "risk free" young, white, American males, while it failed to terminate females who had engaged in the same objectionable behavior. Plaintiffs point, in particular, to Executive Jet's position statement in its response to McCrea's EEOC charges. In that document, the company represented that "virtually all" of McCrea's claims were denied or uncorroborated and that, in many instances, McCrea was a participant in or initiator of the conduct at issue. According to plaintiffs, McCrea's allegations came suspiciously on the heels of a training exercise in which she exhibited an abysmal performance.

The district court entered summary judgment in favor of Executive Jet, concluding that plaintiffs failed to establish a prima facie case of employment discrimination. The district court also concluded that plaintiffs failed to raise a triable issue of material fact that their terminations were a pretext for unlawful discrimination. Plaintiffs seek review of the summary judgment and the district court's denial of their motion to exclude all evidence of and references to the EEOC's determination regarding McCrea's charge. Although plaintiffs' complaint states claims for gender, race, and national origin discrimination, plaintiffs press only their gender discrimination claims before us. Similarly, although plaintiffs asked the district court to strike all references to the EEOC's determination in McCrea's charge and the EEOC's dismissal of their complaints, plaintiffs here press only for the exclusion of evidence relating to the EEOC's determination of McCrea's charges.

## II.

We review the district court's summary judgment de novo. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 746 (9th Cir. 2003). We may affirm the district court's summary judgment on any ground supported by the record. *Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd. of Las Vegas*, 257 F.3d 937, 941 (9th Cir. 2001).

We analyze plaintiffs' Title VII claims through the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). If plaintiffs establish a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination. *Noyes*, 488 F.3d at 1168; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000) (plaintiffs must "introduce evidence sufficient to raise a genuine issue of material fact" as to pretext).

**[1]** To establish a prima facie case, plaintiffs "must offer evidence that 'give[s] rise to an inference of unlawful discrimination.' " *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (alteration in original), *citing Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Plaintiffs may establish a prima facie case based on circumstantial

evidence by showing: (1) that they are members of a protected class; (2) that they were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that "similarly situated individuals outside [their] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *see also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

**[2]** The focus in the case before us is on the fourth element of plaintiffs' prima facie case: whether similarly situated employees engaged in similar conduct but received more favorable treatment by Executive Jet. The district court concluded that plaintiffs failed to establish a prima facie case because they did not show that the female employees who allegedly received more favorable treatment by Executive Jet were in fact similarly situated to plaintiffs. The district court offered two primary reasons for this conclusion: First, the female flight attendants were not similarly situated because they did not report to the same supervisor as plaintiffs, and second, even if the female flight attendants had reported to the same supervisor as plaintiffs, they were not similarly situated because plaintiffs' conduct gave rise to a complaint, while the female flight attendants' alleged conduct did not.

## A.

At the outset, plaintiffs assert that the district court engaged in an overly narrow inquiry in conducting its examination of their prima facie case. Plaintiffs complain that the district court erroneously focused on whether similarly-situated persons received more favorable treatment. Instead, according to plaintiffs, the district court should have looked more broadly at whether the record as a whole gave rise to an inference of discrimination.

**[3]** It is true that the elements and contours of a prima facie case will differ according to the facts at hand. In *McDonnell Douglas*, the Court explained that a prima facie case will vary according to the unique factual circumstances presented in every action: "the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n.13. We have also stated that a plaintiff may show "an inference of discrimination in whatever manner is appropriate in the particular circumstances." *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1361 (9th Cir. 1985). A plaintiff may do so through comparison to similarly situated individuals, or any other circumstances "surrounding the adverse employment action [that] give rise to an inference of discrimination." *Peterson*, 358 F.3d at 603.

**[4]** Here, however, plaintiffs' case *relies* on a comparison between themselves and a group of female employees. Plaintiffs' action sounds in disparate treatment and seeks to raise an inference of discrimination based solely on circumstantial evidence. Plaintiffs' proof of discrimination is that McCrea engaged in or encouraged the language and conduct of which she later complained, and that she and other female flight attendants engaged in lewd and inappropriate conduct but were not disciplined or terminated as were plaintiffs. Plaintiffs invoke the comparison to a group of allegedly similarly-situated female employees to make out a claim of disparate treatment. The district court did not err by focusing on the inference of discrimination that is central to plaintiffs' case.

## B.

Plaintiffs next take issue with the district court's analysis insofar as it determined that plaintiffs and the suspect female flight attendants were not similarly-situated because they did not report to the same supervisor. The district court held that to be similarly situated, "coworkers must have been dealt with by the same supervisor, subject to the same standard, and engaged in similar conduct." Plaintiffs argue that the district

court improperly focused on whether the female employees had the same supervisor as them.

**[5]** It was error for the district court to impose a strict "same supervisor" requirement. We have stated that "whether two employees are similarly situated is ordinarily a question of fact." *Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). The employees' roles need not be identical; they must only be similar "in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *see also Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002). Materiality will depend on context and the facts of the case.

Generally, we have determined that "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). In *Vasquez*, for example, we considered that employees were not similarly situated where the type and severity of an alleged offense was dissimilar. *Id.* Likewise, in *Nicholson v. Hyannis Air Service, Inc.*, a case decided after entry of summary judgment here, we held that an alleged distinction between a female pilot and several male pilots was not material. 580 F.3d 1116, 1125-26 (9th Cir. 2009). Under the allegations of that case, we concluded that a female pilot, who had deficient communication and cooperation skills, was similarly situated to male pilots, who had deficiencies in their technical piloting skills, because both types of deficiencies could be addressed through retraining. Any distinction between the two types of skill sets was "not material for purposes of determining whether the male pilots were 'similarly situated' to" the plaintiff; therefore, the female pilot had made out a prima facie case of discrimination by showing that the male pilots received remedial training for their deficiencies while she received no such instruction. *Id.* at 1126. *Nicholson* again demonstrates that whether employees are similarly situated — *i.e.*, whether they are "similar in all *material* respects," *id.* at 1125 (internal quotation marks omitted) — is

a fact-intensive inquiry, and what facts are material will vary depending on the case.

**[6]** We do not exclude the possibility that the presence or absence of a shared supervisor might be relevant in some cases. But here, the undisputed facts demonstrate that whether plaintiffs and the female flight attendants shared the same direct supervisor should not have been determinative of whether they were similarly situated, because plaintiffs' direct supervisor, Chakerian, was excluded from the decision to terminate them. Instead, the decision to terminate plaintiffs was made directly by Executive Jet's president, Albert Pod. The fact that plaintiffs and the female flight attendants had different direct supervisors did not render them dissimilar in a material respect, because the relevant decision-maker, Albert Pod, was aware of both the allegations against plaintiffs and the allegations plaintiffs had made against the female flight attendants. Similarity between two persons or groups of people is a question of fact that cannot be mechanically resolved by determining whether they had the same supervisor without attention to the underlying issues.

## III.

Therefore, we turn to the alternate ground on which the district court concluded that plaintiffs were not similarly situated to the female flight attendants. The district court held that, *even assuming* the female flight attendants reported to the same supervisor as plaintiffs, the two groups were not similarly situated because the female employees' alleged conduct was not unwelcome and never resulted in a complaint. This consideration provides an independent and sufficient basis to affirm the district court's summary judgment. *See Venetian Casino Resort*, 257 F.3d at 941.

## A.

The concept of "similarly situated" employees may be relevant to both the first and third steps of the *McDonnell Doug-*

*las* framework. In this case, plaintiffs sought to establish that the relevant female flight attendants were "similarly situated" to them but received more favorable treatment in step one of the *McDonnell Douglas* analysis. *See, e.g.*, *Peterson*, 358 F.3d at 603. Turning to step three of the *McDonnell Douglas* analysis, plaintiffs alleged that Executive Jet's explanation for their terminations was pretextual because, among other things, the company failed to discipline or terminate McCrea even though she was similarly situated to them. *See Vasquez*, 349 F.3d at 641; *see generally Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004) (describing different ways in which an employment discrimination plaintiff might establish pretext).

Even though a comparison to "similarly situated" individuals may be relevant both to plaintiffs' prima facie case and proof of pretext, these inquiries constitute distinct stages of the *McDonnell Douglas* burden-shifting analysis. *See generally Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978); *Lynn v. Regents of the Univ. of Cal.*, 656 F.2d 1337 (9th Cir. 1981) (first and third stages must remain distinct because, "[t]o do otherwise would in many instances collapse the three step analysis into a single step at which all issues would be resolved"); *Nicholson*, 580 F.3d at 1124. The difference between the first and third steps of the *McDonnell Douglas* framework is not without some consequence. Among other things, a plaintiff's burden is much less at the prima facie stage than at the pretext stage. *Compare Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)*, and Wallis*, 26 F.3d at 889, *with Godwin*, 150 F.3d at 1220-22, *and Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (requiring "specific, substantial evidence of pretext" to defeat employer's motion for summary judgment); *see also Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004) (describing pretext stage as "rigorous," but prima facie stage as "not onerous").

The district court considered the relevant inquiry — whether plaintiffs and the subject female employees were

similarly situated — in the context of both plaintiffs' prima facie case and at the pretext stage. Insofar as the district court considered Executive Jet's argument in the context of plaintiffs' prima facie case of discrimination, this was unusual. Our cases generally analyze an employer's reasons for why employees are not similarly situated at the pretext stage of *McDonnell Douglas*, not the prima facie stage. *See, e.g.*, *Vasquez*, 349 F.3d at 641. It may well be that the present inquiry is more appropriate for resolution at the third stage of the *McDonnell Douglas* analysis rather than that of pretext. The pretext determination is often cast in terms of the legitimate, nondiscriminatory reason offered by the employer for taking adverse employment action against a plaintiff. *See, e.g.*, *Vasquez*, 349 F.3d at 641; *Wall v. Nat'l R.R. Passenger Corp.*, 718 F.2d 906, 909 (9th Cir. 1983).

Although we seek to conduct our inquiry at the proper *McDonnell Douglas* step, we keep in mind that "[t]he *prima facie* case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' " *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983), *citing Furnco*, 438 U.S. at 577. Thus, we keep sight of the ultimate issue in this case: "whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Furnco*, 438 U.S. at 577 (quotation marks and citation omitted). In this case, there is no need to discuss the issue further. The district court held that plaintiffs had not made out a prima face case because, among other reasons, they had not shown they were similarly situated to the female employees in question. The district court then went on to hold that Executive Jet's argument was not pretextual for the same reasons. We may therefore turn to the substance of plaintiffs' claims.

**B.**

Turning to the substance of the issue, plaintiffs seek to blunt the relevance of the complaints made against them. They argue that the presence or absence of a complaint is not a sufficient justification for differential treatment and that McCrea's complaint was not actually the basis for their terminations. Plaintiffs point to (1) the Sterling report, which reflected that many of McCrea's allegations were uncorroborated; (2) Executive Jet's position statement submitted to the EEOC, in which it maintained that McCrea could not establish a prima facie case of discrimination because the "overwhelming majority" of the incidents could not be corroborated and McCrea could not show that the conduct was unwelcome; and finally, (3) Brusman's testimony that the use of sexual language or the telling of sexual jokes to coworkers was inappropriate behavior warranting termination, "whether anybody is offended by it or not."

Executive Jet management was aware, at the time of plaintiffs' terminations, of plaintiffs' accusations that McCrea and several female flight attendants had engaged in sexualized banter and other similar conduct. Chakerian's report to his superiors indicated that plaintiffs Aldrich and Prince found McCrea's allegations surprising because she had participated in the conduct giving rise to her complaint. Sterling's report reflected an allegation by Prince that McCrea had "hit him on the butt twice," an allegation by Aldrich that McCrea asked "quite frequently about his sex life," and allegations that McCrea participated in "raunchy" banter, as well as some sexually-oriented emails sent by another flight attendant.

**[7]** Plaintiffs' accusations, nevertheless, do not demonstrate that the designated female employees were similarly situated to plaintiffs. Plaintiffs cite the Sterling report selectively. The report confirmed several of McCrea's complaints, including that Hawn pinched McCrea on the buttocks; that Prince forwarded obscene emails to his coworkers; that

pilots, including Prince, had romantic relationships with flight attendants; and that Aldrich called the lead flight attendant a "fat cow." Sterling's report concludes that "the company will have to 'sift the wheat from the [chaff]' in Ms. McCrea's document of complaint . . . ." Even if Executive Jet believed that the majority of McCrea's allegations were not corroborated, and that McCrea participated in some of the complained-of conduct, several instances of sexually harassing behavior by Aldrich, Prince and Hawn were undisputed.

**[8]** Moreover, plaintiffs and the female flight attendants are distinguishable because plaintiffs' conduct gave rise to a complaint of sexual harassment, while the female flight attendants' alleged conduct did not. Plaintiffs never complained of discriminatory treatment or sexual harassment to Executive Jet contemporaneous to the alleged conduct by the female flight attendants. When plaintiffs did report such conduct, it was made defensively in the context of the company's investigations into McCrea's accusations against them. Even in the context of the company's investigations, plaintiffs did not lodge a complaint at any time, and they did not report that they found the female flight attendants' alleged conduct harassing or unwelcome. We have distinguished misconduct by one employee from misconduct by another employee on the basis of whether it prompted complaints or consternation by other employees. In *Meyer v. California and Hawaiian Sugar Co.*, we upheld summary judgment for an employer where the female plaintiff had been terminated after making racially insensitive remarks, even though male employees also had made racist remarks but received no discipline, because the female plaintiff's comments "had such an adverse impact on minority employees that they impaired her usefulness in her sensitive duties in the Personnel Department and, coming from her, reflected unfavorably on [the employer's] policies toward its minority employees." 662 F.2d 637, 640 (9th Cir. 1981). We concluded that, where there was no evidence that the male employees' remarks had "provoked anything comparable to the vigorous reaction" that resulted from the plain-

tiff's comments, the other incidents were "not such parallels to her case as to raise a genuine issue of pretext." *Id.*

**[9]** The presence of complaints has also been deemed a valid distinguishing factor by other circuits. *See Yeager v. City Water & Light Plant*, 454 F.3d 932, 934 (8th Cir. 2006) ("An employer that promulgates a sex harassment policy may reasonably distinguish between sexually oriented conduct that elicits a complaint from an offended co-worker, and arguably comparable conduct that is nonetheless tolerated by co-workers without complaint"). In a case presenting similar facts to this action, *Morrow v. Wal-Mart Stores, Inc.*, two male employees were terminated after complaints of sexual harassment were brought against them. 152 F.3d 559, 560 (7th Cir. 1998). They filed an action, complaining that their employer had enforced its sexual harassment policy more strictly against males than against similarly-situated females. *Id.* at 560. Affirming the district court's summary judgment in favor of the employer, the Seventh Circuit stated,

> Wal-Mart's quick decision to terminate the plaintiffs may seem unfair in a work environment that appears rife with similarly off-color conduct. . . . Although some of Wal-Mart's female employees seem to have engaged in questionable behavior, there is no evidence that any of this behavior sparked complaints of harassment like those that Wal-Mart received concerning [plaintiffs]. Without evidence of similar employee complaints, Wal-Mart cannot be faulted for failing to respond to these incidents in the same way that it responded to [plaintiffs'] situations.

*Id*. at 564.

**[10]** We do not support a "race to the Human Resources office" as the sole determinant of the relevance of a complaint. The existence of a complaint may not always be material or determinative in light of the facts in a given case. We

stress again that the determination whether a plaintiff and a coworker are similarly situated will generally be a question of fact. But in the case before us, plaintiffs' conduct was the subject of a complaint to Executive Jet, while the conduct of McCrea and other female flight attendants was not. Moreover, plaintiffs' reports of inappropriate conduct by female employees were made only in the context of the independent investigation by an outsider, and contain no indication that the conduct was unwelcome or harassing to them. In the course of that investigation, several allegations of harassing conduct by plaintiffs was not only corroborated, but also admitted by plaintiffs. That difference was properly taken into consideration when the district court entered summary judgment.

## IV.

[11] In *Plummer v. Western International Hotels Co.*, we held that a plaintiff has a "right to introduce an EEOC probable cause determination in a Title VII lawsuit." 656 F.2d 502, 505 (9th Cir. 1981). But *Plummer*'s rule was created in the context of the admissibility of an EEOC probable cause determination in a Title VII action by the same plaintiff who complained to the EEOC. The *Plummer* rule is not applicable to all EEOC determinations. In *Gilchrist v. Jim Slemons Imports, Inc.*, we held that a letter of violation was a "substantially different" document than an EEOC probable cause determination in that a letter of violation represented the EEOC's conclusion that a violation has occurred. The letter of violation thereby posed a much greater risk of unfair prejudice, because a "jury may find it difficult to evaluate independently evidence of age discrimination after being informed that the EEOC has already examined the evidence and found a violation." 803 F.2d 1488, 1500 (9th Cir. 1986). We therefore concluded that *Plummer* did not establish a per se rule of admissibility for all EEOC documents, and that the district court should instead exercise its discretion to admit or exclude a letter of violation. *Id.*

Plaintiffs argue that the district court abused its discretion by denying their motion to strike all reference to the EEOC's determination in the McCrea charge. They assert that, because the rule of per se admissibility of EEOC findings applies "only in cases in which the issue in the court proceeding was identical to that which the EEOC had earlier investigated," the EEOC's determination should not have been admitted here. Further, plaintiffs assert that the McCrea determination is irrelevant because it was issued months after they were terminated.

**[12]** Admission of the EEOC determination was not an abuse of discretion. As *Plummer* stated, there is little reason to fear prejudice in a bench trial, where "the admission of incompetent evidence over objection will not ordinarily be a ground of reversal if there was competent evidence received sufficient to support the findings. The judge will be presumed to have disregarded the inadmissible and relied on the competent evidence." *Plummer*, 656 F.2d at 505 (internal quotation marks omitted). The same rationale applies here, where plaintiffs' motion to strike was made in the context of a summary judgment proceeding where there could be no jury, thereby reducing the danger of the type of prejudice expressed in *Gilchrist. See Plummer*, 656 F.2d at 505 ("[T]here is support for the general proposition that the admissibility of evidence varies between jury and non-jury trials"). The district court exercised its discretion in weighing the admissibility of the document, as required under *Gilchrist*, and plaintiffs have made no showing of prejudice from its admission.

**AFFIRMED.**