**Reversed and Rendered and Opinion filed June 5, 2012.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

———————————

**NO. 14-11-00498-CV**

———————————

**THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON,**
**Appellant**

**V.**

**NICOLE PETTEWAY, Appellee**

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 09CV1537**

## OPINION

In this gender-discrimination case, Nicole Petteway sued her former employer, the University of Texas Medical Branch at Galveston ("UTMB"), alleging that she received disparate discipline on the basis of her gender. UTMB filed a plea to the jurisdiction in which it argued that Petteway failed to assert a claim for which UTMB's sovereign immunity had been waived. The trial court denied the plea, and UTMB brought this interlocutory appeal. Because (a) Petteway failed to assert a claim for which immunity

has been waived, and (b) UTMB has negated the existence of jurisdictional facts, we reverse and render judgment dismissing the case with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007 and the early part of 2008, Nicole Petteway and Leon McGrew had an extramarital affair while they were employed as nurses at UTMB. The two worked on the adjacent units on the same floor of the facility. Their respective spouses also were employed by UTMB, but worked in other departments.

On or about January 28, 2008, Petteway was confronted at work about her relationship with McGrew by Mary Jackson, another female UTMB employee who also had a longstanding relationship with him. The two women then went to the unit where McGrew worked, and in the presence of other co-workers, confronted him about the relationships. As Petteway was leaving work that night, she again confronted McGrew in the parking lot. According to Petteway, she ended the relationship with McGrew at that time. The next day, McGrew complained to Dee Gallardo, the nurse manager for both McGrew's unit and Petteway's unit, that Petteway was sexually harassing him. Gallardo spoke with both Petteway and McGrew, and both employees agreed that they would have no further communication that was not work-related. Ten days later, McGrew gave his employer a written complaint in which he stated that Petteway continued to harass him. He stated that on February 1, 2008, Petteway came to his unit, told him that she wanted to be friends, and asked "how I could do her this way." McGrew complained that he locked himself in a bathroom to get away from Petteway, and when he opened the door, he found that she was waiting for him. He related that he closed the door and waited for her to leave, then telephoned Gallardo and reported the behavior. Petteway allegedly approached McGrew again, and he told her that he had reported her actions. According to McGrew, Petteway apologized and said that she would not violate the terms of their agreement again if he would speak with Gallardo and ask her "not to pursue this situation

with Human Resources." Six days later, however, there was another confrontation on the unit where McGrew worked, and he was heard yelling at Petteway to get away from him. McGrew stated in his written report that Petteway repeatedly followed him, telling him "she would always be there for me" and asking him why he was "acting so cold" to her. According to McGrew, Petteway approached him twice at the nurses' station, and when he was leaving, she followed him to the elevator. McGrew stated that he went to a different elevator, and then to the stairs, but Petteway continued to follow him until he yelled at her. He claimed that she then approached him in the parking lot.

McGrew's complaint was forwarded to the Human Resources Consultant Yoni Benson, who interviewed McGrew and Petteway. According to Benson, Petteway admitted the allegations, but Petteway testified at a later hearing that she told Benson the allegations were false. Petteway further stated that she asked to write a rebuttal and that Benson told her it was unnecessary. Benson concluded that McGrew's complaint was substantiated. Because Petteway was a "Nurse Clinician IV" with specialized skills and McGrew was a "Nurse Practitioner I or II," Benson initially determined to recommend that UTMB should retain Petteway in her current position and transfer McGrew; however, before Benson made any recommendation, McGrew submitted a third complaint. He stated on February 21, 2008, Petteway again came to his unit and repeatedly followed him and tried to talk about their relationship until he yelled at her and telephoned Gallardo. Gallardo then asked to speak to Petteway and told Petteway to leave. Petteway later stated that she had been scheduled to work on McGrew's unit at Gallardo's request. Gallardo denied this.

Based on the continued complaints, Benson recommended Petteway's termination. On February 26, 2008, Gallardo notified Petteway in writing that McGrew's complaints had been investigated and "violations of the sexual harassment policy were validated." Gallardo stated that she intended to ask UTMB to terminate Petteway's employment the

3

following day, and invited Petteway to inform her, in person or in writing, if any of the facts were incorrect or if there was any reason that she should not be terminated. Petteway did not respond, and UTMB terminated her employment on February 27, 2008. She appealed the decision to in accordance with UTMB's internal policies, and her termination was upheld.

After exhausting her administrative remedies with the Equal Employment Opportunity Commission, the Texas Commission on Human Rights, and the Texas Workforce Commission, Petteway sued UTMB for gender discrimination. She alleged that she received disparate treatment from UTMB because she was terminated and McGrew was not. UTMB filed a plea to the jurisdiction in which it asserted that Petteway had not and could not plead a prima facie case of discrimination. Specifically, UTMB argued that Petteway alleged only that McGrew received more favorable treatment in that his employment was not terminated, but did not allege that she and McGrew were similarly situated. In addition, UTMB asserted and offered evidence that the two are not similarly situated because Petteway was the subject of sexual-harassment complaints and McGrew was not. The trial court denied the plea, and UTMB timely appealed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2011) (authorizing the interlocutory appeal of the trial court's denial of a plea to the jurisdiction).

## II. STANDARD OF REVIEW

Governmental entities such as UTMB are immune from suit unless the legislature has waived immunity. *See Univ. of Tex. Med. Branch at Galveston v. Simmons*, No. 14-11-00215-CV, 2012 WL 19665, at *2 (Tex. App.—Houston [14th Dist.] Jan. 5, 2012, no pet.) (mem. op.). One such waiver can be found in the Texas Commission on Human Rights Act (the "TCHRA"), which provides that an employer may not discriminate against or discharge an employee based on the employee's race, color, disability, religion, sex, national origin, or age. *See* TEX. LAB. CODE ANN. § 21.002(8)(D) (West Supp. 2011)

(defining "employer" to include "a county, municipality, state agency, or state instrumentality"); *id.* § 21.051 (West 2006) (listing the protected classes of people to whom the TCHRA applies); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) (holding that "the TCHRA "clearly and unambiguously waives immunity"). UTMB, however, filed a plea to the jurisdiction in which it argued that the trial court lacked jurisdiction because Petteway has not and cannot allege a claim within the scope of the TCHRA's waiver of immunity. Thus, UTMB has challenged both the sufficiency of Petteway's pleadings and the existence of jurisdictional facts.

The determination of whether the pleadings contain factual allegations affirmatively demonstrating the trial court's subject-matter jurisdiction presents a question of law that we review de novo. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To make this determination, we construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, the plaintiff should be afforded the opportunity to amend unless the pleadings demonstrate incurable jurisdictional defects. *Id.* at 226–27. If the defendant challenges the existence of jurisdictional facts and the jurisdictional challenge implicates the merits of the plaintiff's case, the trial court considers relevant evidence if necessary to resolve the jurisdictional issues. *Id.* at 227. If the evidence creates a question of fact, then the trial court cannot grant the plea to the jurisdiction. *Id.* at 227–28. On the other hand, if the pleadings or evidence affirmatively negate a jurisdictional fact, then the court may grant the plea to the jurisdiction without allowing the plaintiff an opportunity to amend the pleadings. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008).

### III. ANALYSIS

To prevail on a claim of gender discrimination, the plaintiff must establish that (1) she is a member of a of a class protected by the TCHRA, (2) she was qualified for her

position, (3) she was terminated, and (4) she was treated less favorably than similarly situated members of the opposing class. *See Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam). UTMB does not dispute that Petteway meets the first three elements, but instead argues both that Petteway failed to allege that she and McGrew are similarly situated, and that the undisputed evidence establishes that they are not similarly situated. We agree with both of these contentions.

"Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. To prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *Id.* (footnotes omitted). In a gender-discrimination case, the plaintiff usually must show that the misconduct for which she was discharged was nearly identical to that engaged in by an employee of the other gender whom the company retained. *See id.* at 918 (citing *Smith v. Wal-Mart Stores, Inc.*, 891 F.2d 1177, 1180 (5th Cir. 1990)).[1] In addition, the plaintiff and the comparator must "have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

In her pleadings, Petteway specifically alleged that McGrew filed a complaint of sexual harassment against her on January 28, 2008, but she did not allege that anyone made similar complaints against McGrew. Thus, she failed to allege that she and McGrew are similarly situated. *See Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 562 (7th Cir. 1998) (employees who are the subject of sexual-harassment complaints are not similarly situated to employees against whom no such complaint was made); *accord*, *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1160 (9th Cir. 2010); *accord*, *Yeager v. City Water & Light Plant of Jonesboro, Ark.*, 454 F.3d 932, 933–34 (8th Cir. 2006).

---

[1] Because the legislature intended state employment-discrimination law to correlate with federal law, we may look to federal employment-discrimination cases for guidance. *Id.* (citing *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003)).

Moreover, the evidence establishes that Petteway and McGrew are not similarly situated. It is undisputed that McGrew reported to his supervisor that he was sexually harassed at work by Petteway on or about January 15–29,[2] February 1, February 7, and February 21, 2008, but there is no evidence that McGrew's co-workers accused him of workplace sexual harassment.

Petteway has tried to avoid this dissimilarity by focusing on Dee Gallardo's instruction that McGrew and Petteway were not to converse at work about matters that were not work-related. Petteway contends that she was terminated even though she did not approach McGrew or violate any workplace rules, whereas McGrew violated this rule and was not terminated. Thus, she seems to contend that she and McGrew engaged in similar misconduct in that McGrew violated Gallardo's orders by speaking to Petteway, whereas she violated the order, if at all, only by listening to McGrew's statements on those dates. Under the applicable standard of review, we assume that McGrew violated this rule and Petteway complied with it; however, this does not change the fact that Petteway was the subject of repeated sexual-harassment complaints, and McGrew was not. Given this difference in their violation histories, Petteway and McGrew are not similarly situated. *See, e.g.*, *Hawn*, 615 F.3d at 1160; *Yeager*, 454 F.3d at 933–34; *Morrow*, 152 F.3d at 562.

We accordingly sustain UTMB's sole issue.

---

[2] In a later letter, McGrew stated that he complained on January 29, 2008 that Petteway had been harassing him "for the last two weeks."

## IV.  CONCLUSION

Because both Petteway's pleadings and the undisputed facts negate jurisdiction, we reverse the trial court's judgment and render judgment dismissing Petteway's case with prejudice.[3]

/s/     Tracy Christopher
Justice

Panel consists of Justices Frost, Brown, and Christopher.

---

[3] *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 846 (Tex. 2007) (dismissal pursuant to a plea to the jurisdiction based on sovereign immunity is with prejudice).