# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00726-CV

**Texas Alcoholic Beverage Commission, Appellant**

**v.**

**Mario Villarreal, Appellee**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-000474, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Alcoholic Beverage Commission (the Commission) appeals the denial of its plea to the jurisdiction in Mario Villarreal's suit asserting claims of age discrimination and race discrimination under the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (allowing interlocutory appeal of order granting or denying plea to jurisdiction by governmental unit); Tex. Lab. Code §§ 21.001-.556. We will reverse and render judgment dismissing Villarreal's claims.

## BACKGROUND

Villarreal worked for the Commission for approximately 24 years and, when terminated from the Commission's employment in 2019, held the rank of Lieutenant. After his employment was terminated, Villarreal filed suit against the Commission alleging age and race discrimination. In his amended petition, Villarreal alleged that, at the time of his termination, he

was "a supervisor with authority over numerous field agents responsible for enforcement of State alcohol regulations regarding permitting and selling liquor in stores and restaurants within the State of Texas." Villarreal alleged that the Commission terminated his employment after the Commission's human resources department investigated a complaint related to an interaction between Villarreal and a female agent, Neva Saenz. Villarreal alleged that the investigation resulted in the Commission's finding that Villarreal's conduct constituted two violations of Commission policy. Villarreal alleged that the conduct forming the basis of the human resources department's findings did not occur and that he was unaware that the Commission had "allegedly placed a no contact order between both Saenz and [him]."[1] Villarreal alleged that, when the Commission terminated his employment, it provided "[n]o reasons, details or justifications" and that he "appealed his termination and [the Commission] denied his grievance appeal."

In his suit against the Commission, Villarreal asserted causes of action for age and race discrimination under the TCHRA. The Commission filed a plea to the jurisdiction, asserting that Villarreal had failed to establish a prima facie case of either race or age discrimination. The Commission further asserted that, in the event the court determined that Villarreal had established a prima facie case of discrimination, it had a legitimate, non-discriminatory reason for terminating his employment; specifically, Villarreal's having violated the Commission's policies against harassment. Thus, the Commission argued, Villarreal failed to establish a waiver of the agency's sovereign immunity.

---

[1] The Commission's stated reason for terminating Villarreal's employment was conduct toward Agent Saenz that violated Commission workplace policy. Villarreal stated in his petition that he "did not make any physical contact with Agent Saenz in a copy machine room, whereby, no witnesses nor video substantiated Agent Saenz's accusation."

After a hearing, the trial court sustained Villarreal's objections to some of the evidence the Commission presented in support of its plea to the jurisdiction and denied the plea. The Commission then perfected this interlocutory appeal in which it again asserts that Villarreal failed to establish a prima facie case of discrimination, that it presented evidence supporting a legitimate, non-discriminatory reason for terminating Villarreal's employment, and that Villarreal failed to establish that the Commission's proffered reason for terminating his employment was a pretext.

On appeal, the Commission argues that Villarreal failed to show the fourth element of a prima facie case of race or age discrimination because he did not establish that a similarly situated employee was treated more favorably than he was. Both in the trial court and on appeal, Villarreal counters that he established the fourth element of a prima facie case of race discrimination by presenting evidence that Commission Chief Law Enforcement Officer Kuykendoll was "treated differently than" Villarreal because Chief Kuykendoll's employment was not terminated based on conduct Villarreal alleges was more egregious than the conduct of which Villarreal was accused and for which his employment was terminated. Villarreal maintains that he established the fourth element of a prima facia case of age discrimination by presenting evidence that Miguel Moreno, a 34-year-old Commission employee, was "treated differently than" Villarreal because Moreno's employment was not terminated despite Villarreal's allegation that Moreno had "committed voter fraud and received deferred adjudication from the State Attorney General's Office." Thus, we must determine whether Villarreal established a prima facie case of age and race discrimination based on disparate discipline.

3

**STANDARDS OF REVIEW**

### 1. Sovereign Immunity

Sovereign immunity "prohibits suits against the state unless the state consents and waives its immunity." *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018); *see Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Immunity from suit implicates the court's subject matter jurisdiction and may be raised in a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). For the State to waive its sovereign immunity, the legislature must do so "'by clear and unambiguous language.'" *Nazari*, 561 S.W.3d at 500 (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 328-29 (Tex. 2006)).

### 2. TCHRA Generally

The TCHRA clearly and unambiguously waives sovereign immunity, but only if a claimant states a claim for conduct that actually violates the statute. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *Garcia*, 372 S.W.3d at 637 (citing Tex. Lab. Code § 21.254). The TCHRA prohibits an employer from committing an "unlawful employment practice" against an employee "because of" the employee's "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. The TCHRA also protects employees who are "40 years of age or older." *Id.* at § 21.101. Typically, an employer commits an unlawful practice "because of" an employee's age if the employee's age was "a motivating factor" for the alleged wrongful act or practice, "even if other factors also motivated the practice." *Id.* § 21.125(a). Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's race, the employer "discharges an individual, or discriminates in any other manner

against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Id.* § 21.051(1). The Texas Legislature modeled the TCHRA after federal law "for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Elgahil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.— Fort Worth 2000, pet. denied); *see Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001). Therefore, when analyzing a claim brought under the TCHRA, we look to state cases as well as analogous federal statutes and the cases interpreting those statutes for guidance. *Quantum Chem. Corp.*, 47 S.W.3d at 476.

When, as here, the plaintiff produces no direct evidence of discrimination,[2] he must make out a prima facie case of discrimination under the *McDonnell-Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this analysis, the plaintiff is entitled to a presumption of discrimination if he meets the "minimal" initial burden of establishing a prima facie case of discrimination. *Garcia*, 372 S.W.3d at 634. After the plaintiff establishes a prima facie case, the burden of production shifts back to the defendant-employer to articulate legitimate non-discriminatory reasons for any allegedly unequal treatment. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once the employer articulates a non-discriminatory reason, the burden again shifts back to the plaintiff to prove that the articulated reason is a mere pretext for unlawful discrimination. *Id.* at 804. Although the burden of production shifts between the parties,

---

[2] Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). If an inference is required for the evidence to be probative as to the employer's discriminatory animus in making the employment decision, the evidence is circumstantial, not direct. *Id.* at 897-98. Statements that courts have found to be direct evidence of discrimination have tended to be insults or slurs against the protected group. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1083 (5th Cir. 1994); *Martin v. Bayland, Inc.*, 403 F. Supp. 2d 578, 582 (S.D. Tex. 2005), *aff'd*, 181 F.App'x 422 (5th Cir. 2006) (per curiam).

the burden of persuasion "remains continuously with the plaintiff." *Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 423 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *see Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 813-14 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

### 3. Plea to the Jurisdiction

Whether a court has subject matter jurisdiction is a question of law we review de novo. *Miranda*, 133 S.W.3d at 226. In *Alamo Heights*, the Texas Supreme Court explained:

> A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both. When [it] challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction. If [it] challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim.
>
> [In the latter situation], the standard of review mirrors that of a traditional summary judgment: '[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction.' In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. In doing so, however, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not.

*Alamo Heights*, 544 S.W.3d at 770-71 (quoting *Miranda*, 133 S.W.3d at 221) (other citations omitted). In TCHRA cases, questions regarding jurisdiction and the merits of the case often overlap, and when that occurs, the proceeding mirrors that of a traditional summary judgment motion. *See id.* at 770. *Miranda* explains:

> We acknowledge that this standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). We adhere to the fundamental precept

6

that a court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided . . . . By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.' *Bland*, 34 S.W.3d at 554. Instead, after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue.

*Miranda*, 133 S.W.3d at 228 (citations omitted). Here, the Commission challenged the existence of jurisdictional facts—specifically, whether Villarreal had established a prima facie case of age or race discrimination—and submitted evidence with its plea. Thus, we review this as we would a traditional summary judgment motion, taking as true all evidence favorable to Villarreal, indulging every reasonable inference and resolving any doubts in his favor, while considering evidence and inferences unfavorable to him if reasonable jurors would be unable to disregard them. *See Alamo Heights*, 544 S.W.3d at 770-71.

### *4.* McDonnell-Douglas *Framework*

Under the TCHRA, an unlawful employment practice is established when age, sex, race, or other protected characteristics are a "motivating factor" for the action, even if other factors also motivated the practice. *See* Tex. Lab. Code § 21.125(a); *Quantum Chem.*, 47 S.W.3d at 480. Discriminatory motive can be shown with either direct or circumstantial evidence. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Jespersen v. Sweetwater Ranch Apts.*, 390 S.W.3d 644, 653-54 (Tex. App.—Dallas 2012, no pet.). Circumstantial evidence, on the other hand, refers to evidence that requires an inference to be made regarding the employer's discriminatory motive. *Id.* ("If an inference is required for the evidence to be probative as to the employer's discriminatory animus in making the employment decision, the evidence is circumstantial, not direct.").

7

In the absence of direct evidence of discrimination, a plaintiff can prove unlawful employment discrimination using the indirect, circumstantial evidence method of proof set forth in *McDonnell Douglas. See Garcia*, 372 S.W.3d at 634. Under that method, once a plaintiff establishes a prima facia case of discrimination, a presumption of discrimination exists, which shifts the burden to the employer to produce a legitimate, non-discriminatory reason for its actions; if the employer does so, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show the employer's asserted reasons were a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802-05.

In *McDonnell Douglas*, the Supreme Court explained the prima facie proof required as follows:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802 (setting forth elements of prima facie case of discrimination claim by former employee who sued after his employer refused to rehire him). The Court explained, "The facts necessary will vary . . . and the specification above of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n.13.

After *McDonnell Douglas*, the Supreme Court has repeatedly indicated that the prima facie case is "not intended to be an inflexible rule." *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978)). The Court explained:

Rather, an individual plaintiff may establish a prima facie case "by showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII."

*Young*, 575 U.S. at 228.

This Court has stated that a plaintiff may establish a prima facie case for employment discrimination if he shows that (1) he was a member of a protected class, (2) he was qualified for his employment position, (3) he was subjected to an adverse employment decision, and (4) he was replaced by someone outside of the protected class, or he was treated less favorably than similarly situated members of the opposing class. *See University of Tex. at Austin v. Kearney*, No. 03-14-00500-CV, 2016 WL 2659993, at *5 (Tex. App.—Austin May 3, 2016, pet. denied) (mem. op) (citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (setting out elements of disparate treatment claim)). Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. *Monarrez*, 177 S.W.3d at 917; *University of Tex. Med. Branch at Galveston v. Petteway*, 373 S.W.3d 785, 789 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The misconduct of the disciplined and undisciplined employees must be of "comparable seriousness" and "nearly identical," and the plaintiff and other employees must have "essentially comparable violation histories." *Monarrez*, 177 S.W.3d at 917-18, *Petteway*, 373 S.W.3d at 789.

## DISCUSSION

In the present case, Villarreal sought to establish a prima facie case of age and race discrimination by showing that he was (1) a member of a protected class, (2) qualified for his employment position, (3) subjected to an adverse employment decision, and (4) treated less favorably than similarly situated members of an opposing class. *See Kearney*, 2016 WL 2659993,

at *5.  In his petition, to show a prima facie case of race discrimination, Villarreal alleged that Chief Kuykendoll, an Anglo, was accused of sexual harassment that was substantiated by an internal investigation, but did not have his employment terminated by the Commission.  Villarreal alleged that, because his employment was terminated after a finding of sexual harassment, he was treated less favorably than Kuykendoll, a similarly situated Anglo.  To show a prima facie case of age discrimination, Villarreal alleged that Miguel Moreno, who was more than five years younger than Villarreal, did not have his employment terminated after having been accused of voter fraud.  Villarreal asserted that, despite evidence of wrongdoing, Moreno retained his employment.  Villarreal alleged that, because his employment was terminated and Moreno's was not, he was treated less favorably than Moreno, a similarly situated younger employee.

In response to the Commission's plea to the jurisdiction challenging Villarreal's claim of disparate treatment, Villarreal submitted evidence to support his claim.  This included the deposition testimony of Commission employee Major Menn, who testified that Kuykendoll was, and remained, the Commission's Chief Law Enforcement Division Officer.  Menn stated that, in connection with a Commission employee's retaliation claim, a jury found that Kuykendoll retaliated against the employee after the employee reported that Kuykendoll had sexually harassed someone.  Menn also testified that Moreno was approximately 20 years younger than Villarreal and remained employed by the Commission after having received a deferred adjudication for alleged voter fraud.[3]  Villarreal also submitted deposition testimony of Darrell Dement, who stated that Chief Kuykendoll was still employed at the Commission despite a jury having found

---

[3] The evidence submitted related to this issue showed that Moreno was accused of having misrepresented that he had a qualifying disability when he submitted an application for a ballot by mail.

10

that he retaliated against a witness who provided information concerning Kuykendoll's having sexually harassed a male Commission employee by grabbing his buttocks. Dement stated that the Commission had commenced an internal investigation into the reported incident. Dement also testified that Moreno, a 34-year-old employee, had committed voter fraud but was allowed to continue his employment after "the State Attorney General's Office negotiated a plea offer." Finally, Villarreal submitted the deposition testimony of Chief Kuykendoll who confirmed that the Commission was held civilly liable for retaliation after Kuykendoll terminated the employment of an employee who reported that Kuykendoll had "used his hand to grab the buttocks of a male employee." Kuykendoll also confirmed that he continued to be employed by the Commission.

The Commission submitted evidence relevant to Villarreal's disparate treatment claim.[4] The Commission's evidence showed that the Commission initiated an investigation of Villarreal's alleged harassing behavior toward Agent Neva Saenz. The Commission's evidence showed that Villarreal had a history of harassing conduct toward Agent Saenz, which had resulted in the Commission's previously directing Villarreal to have no contact with Agent Saenz. The Commission submitted evidence that Villarreal had admitted to prior inappropriate conduct with Agent Saenz, including having made inappropriate comments about her attire while unbuttoning his shirt and having researched and discussed sensitive topics related to Agent Saenz's health condition and reproductive system. The evidence submitted by the Commission showed that the Commission had made findings regarding Villarreal's workplace conduct including that: (1) he was under a prior directive not to have interaction with Agent Saenz due to previous complaints

---

[4] Villarreal objected to a portion of the Commission's proffered evidence on the ground that it was not supported by a sufficient business-records affidavit. The trial court sustained the objection, and the Commission did not challenge that ruling on appeal. This Court does not rely on or reference any of the excluded evidence.

about his conduct; (2) he had previously called a female agent a "bitch"; (3) in December 2017, Villarreal was given a letter informing him that he should expect to receive further disciplinary action up to and including termination for future violations of Commission policies; (4) complaints about his conduct toward female employees were filed against Villarreal in 2015, 2016, 2017, and 2018; and (5) Villarreal had received admonishments, refresher EEO training on Civil Treatment for Leaders, written reprimands, and a 2-day disciplinary suspension without pay to address his past behavior and interactions with female employees. The Commission submitted as evidence the conclusions of its internal investigation, including that "despite receiving admonishments, refresher Equal Employment Opportunity training, written reprimands, and a 2-day disciplinary suspension without pay to address his behavior and interaction with females in the past, corrective measures did not appear to have remedied his behavior or conduct as evidenced by his most recent decision to violate a directive [to have no contact with Agent Saenz]."

In its plea to the jurisdiction, and on appeal, the Commission argues that Villarreal did not satisfy the disparate treatment element of his prima facie case of either race or age discrimination because he did not raise a fact issue as to whether other similarly situated employees were treated more favorably. We agree. With regard to race discrimination, Villarreal maintains that Chief Kuykendoll is a "comparator" whose continued employment in the face of a finding of sexual harassment establishes that the Commission treated a similarly situated Anglo employee more favorably than it did him. *Alamo Heights* makes clear that employees are "similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." 544 S.W.3d at 791 (citing *Monarrez*, 177 S.W.3d at 917)). While Villarreal denied that he engaged in the conduct for which the Commission claims to have terminated his employment, he did not present any evidence to dispute his history of workplace

12

conduct that resulted in his receiving refresher training, admonishments, written reprimands, and disciplinary suspension. By contrast, Villarreal presented no evidence that his "comparator," Chief Kuykendoll, had engaged in more than one incident of workplace misconduct or that he had, despite being admonished not to, continued to have conduct with a particular employee.

To prove discrimination based on disparate discipline, the situations and conduct of the employees in question must be "nearly identical." *Monarrez*, 177 S.W.3d at 917. The disciplined and undisciplined employees' misconduct must also be of "comparable seriousness." *Id.* Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be "nearly identical." *See id.* at 917; *see also Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001). The situations and conduct of employees are not nearly identical "when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). Here, Villarreal's undisputed history of workplace misconduct accounts for the difference in treatment he received from the Commission compared to Kuykendoll, who Villarreal failed to show had committed more than one act of workplace misconduct. Villarreal has failed to raise a genuine issue of material fact regarding the disparate treatment element of his prima facie case of race discrimination; that is, that he was treated less favorably than a similarly situated member outside of his protected racial class.

With regard to the disparate treatment element of his prima facie case of age discrimination, Villarreal presented evidence that a younger employee, Moreno, did not have his employment terminated after entering into a negotiated plea agreement arising out of allegations of voter fraud by improperly requesting a ballot to vote by mail. This non-workplace conduct

is so dissimilar to Villarreal's in both manner and degree that it fails to constitute conduct of "comparable seriousness" to Villarreal's history of repeated workplace sexual harassment of a female agent even after receiving additional EEO training, reprimands, and disciplinary suspension. *Monarrez*, 177 S.W.3d at 917. Based on the evidence before this Court, we conclude that Villarreal failed to raise a genuine issue of material fact as to whether a younger employee who engaged in conduct similar to his was treated more favorably. Thus, he failed to raise a genuine issue of material fact regarding the disparate treatment element of his prima facie case of age discrimination.

Having failed to establish a prima facie case of either age or race discrimination, Villarreal was not entitled to a presumption of unlawful discrimination under the *McDonnell-Douglas* framework. *See McDonnell Douglas Corp.*, 411 U.S. at 802-05. In the absence of essential jurisdictional facts sufficient to demonstrate a waiver of the Commission's sovereign immunity under the TCHRA, the Commission's plea to the jurisdiction should have been granted.

## CONCLUSION

Villarreal failed to establish a prima facie case of age or race discrimination under the TCHRA and has, therefore, failed to state a claim for conduct that violates the statute and waives the Commission's sovereign immunity. Therefore, the trial court erred in denying the Commission's plea to the jurisdiction. We reverse the trial court's order denying the plea to the jurisdiction, grant the plea, and render judgment dismissing Villarreal's suit for want of jurisdiction.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Reversed and Rendered

Filed:   December 19, 2024